**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

In re:

Case No. HG 05-13002

WILLIAM FREDERICK FLEMING and
KIMBERLY ANN FLEMING,

     Debtors.

_____/

## OPINION RE: TRUSTEE'S APRIL 27, 2009 MOTION - TURNOVER

Appearances:

Kathleen M. Dunne, Esq., Rockford, Michigan, attorney for the Debtors
Mitchell J. Hall, Esq., Wyoming, Michigan, attorney for the Chapter 7 Trustee

Jeff A. Moyer ("Trustee") has filed a motion under Section 542 of the Bankruptcy Code[1] to recover from Debtors William and Kimberly Fleming tax refunds and other amounts that had become the estate's property upon the commencement of their Chapter 7 case. Trustee's motion is denied.

## BACKGROUND[2]

The Flemings filed their case on September 13, 2005. They also filed on the same day their statement of affairs and accompanying schedules.[3] Schedule B addressed the Flemings' personal

---

[1] 11 U.S.C. § 542. Unless otherwise designated, all further references to "Section ____," "Bankruptcy Code," or "Code" shall be to the Bankruptcy Code as currently amended. 11 U.S.C. §§ 101, *et seq.*

[2] This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and W.D. Mich. LCivR 83.2 (W.D. Mich.). The matter considered is also a core proceeding. 11 U.S.C. §§ 157(b)(2)(A) and (O). Therefore, the court's decision is final subject only to appeal under 28 U.S.C. § 158.

    The court conducted an evidentiary hearing on November 17, 2009. The proofs consisted of Mr. Fleming's testimony and various exhibits. This opinion incorporates the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and FED. R. CIV. P. 52(a)(1).

[3] "Except in a Chapter 9 municipality case, the debtor, unless the court orders otherwise, shall file the following schedules, statements, and other documents, prepared as prescribed by the appropriate Official

property, including estimated tax refunds for the current year. Specifically, Item 20 of Schedule B required disclosure of all tax refunds and their estimated value. The Flemings responded by checking "None" on the form.

Nonetheless, Trustee sent a letter to the Flemings shortly after the close of the year requesting that they provide him with their 2005 tax returns when completed. Trustee's letter also directed them not to spend or otherwise transfer any tax refund they might recover for that year until he had given them his permission.

Mr. Fleming wrote back to Trustee on February 23, 2006. He indicated in the letter that he and his wife had filed both their federal and state returns. Mr. Fleming also acknowledged that "[t]he money, when it arrives, will remain in my account and untouched until your written release." Trustee's Ex. 2. Money, in this instance, meant the $6,831 the Flemings now expected as their 2005 tax refund.

It appears that Trustee had only three more communications with the Flemings before initiating the Section 542 motion now before the court.[4] All three were letters sent by Trustee to the Flemings' former counsel, Attorney Rhonda Russell. The first letter, dated March 2, 2006, acknowledged receipt of the Flemings' 2005 tax returns. Trustee also informed Attorney Russell that the Flemings needed to account for the estate's pro rata share of that refund.

---

Form . . . ." FED. R. BANKR. P. 1007(b)(1).

[4]It is possible that Trustee may have had other communications with the Flemings' former attorney. However, Trustee did not testify and there is otherwise nothing in the record to contradict the inference that these three letters were the only communications between Trustee and the Flemings' former attorney.

2

Obviously, the Flemings had not claimed any of the tax refund as exempt in their original Schedule C[5] because they had not disclosed any expected refund in their original Schedule B. Nor had they amended either schedule when they thereafter discovered that they would be receiving a refund. In fact, the Flemings never amended either Schedule B or C to include the tax refund until the day before the November 17, 2009 evidentiary hearing.[6] While Schedule B as currently amended acknowledges that $4,791.06 of the refund received should be treated as property of the estate,[7] amended Schedule C now claims the entire amount as exempt under Section 522(d)(5).

Trustee's remaining two letters were sent in January 2007 and October 2008. Each letter indicated that Trustee had not heard from the Flemings for some time and each renewed Trustee's request that the Flemings account for the non-exempt portion of their property. The October 2008 letter also threatened for the first time a turnover proceeding. However, Trustee waited another six months after the October 2008 letter to actually file the threatened motion.

Trustee's turnover motion also references the Flemings' home and $166 in cash and deposit accounts.[8] The Flemings had disclosed these interests in their original schedules and Trustee in turn

---

[5]Section 522 permits a debtor to exempt from the estate certain items of property so as to facilitate his fresh start. Schedule C is the form used by debtors to designate what they intend to claim as exempt. *Cf.* FED. R. BANKR. P. 4003(a).

[6]Attorney Kathleen Dunne represented the Flemings at the evidentiary hearing and the amendment was made with Attorney Dunne's assistance. Attorney Dunne had replaced Attorney Russell only days before the hearing.

[7]The practice in this district is to prorate the expected tax refund for the year in which the case is commenced, with the estate's share being based upon the number of days that preceded the petition date.

[8]Specifically, the Flemings indicated that they had $20 cash and $146 deposited in accounts with Kenowa Municipal Federal Credit Union, Bell Com Credit Union, and Independent Bank.

had successfully objected to their exemption.[9]   However, Trustee decided at the final prehearing conference to drop the residence from the requested relief.   Therefore, the evidentiary hearing focused only upon whether the Flemings had to account under Section 542 for the tax refund, the cash, and the deposit accounts.

## DISCUSSION

A.     Tax Refund

This case is symptomatic of the difficulty Chapter 7 trustees have had in this district concerning the administration of tax refunds for which no return has been filed.[10]   As noted earlier, there is no question that debtors are to identify in their schedules all undetermined tax refunds together with an estimate of what they expect may be refunded.   Yet the custom among debtors has been to ignore what is required.   Debtors have instead routinely withheld disclosing anything about their current year's refund until the return is actually filed, if even then.

Withholding this information creates a dilemma for the trustee.   On the one hand, the trustee will often suspect from the pay stubs and past returns provided to him that the debtor is entitled to a tax refund notwithstanding his declaration to the contrary.   On the other hand, it is just as apparent in many instances that whatever the debtor will receive as a refund would be eligible for exemption.   Indeed, it is common for a debtor to amend his Schedule C to add the tax refund as an exempted

---

[9]See Order Re: Trustee's December 8, 2005 Objection to Exemptions (April 11, 2007, DN 27).   The Flemings did question the timeliness of Trustee's objection in the last-minute brief they filed in connection with the November 17, 2009 evidentiary hearing.   However, no motion has ever been filed to set aside the April 11, 2007 Order.   Cf. FED. R. BANKR. P. 9023 and 9024.

[10]A debtor will not have prepared his tax return for the calendar year in which he filed for relief and he may not have filed his return for the preceding year if, for example, he commenced his case in either January or February.   Consequently, in nearly every bankruptcy case there is at least one year for which a return has not yet been filed.

4

asset at the same time he amends his Schedule B to finally disclose it as the estate's property. Therefore, the trustee must frequently decide whether to pursue on his own an undisclosed refund and risk coming up empty handed if it is later claimed as exempt or to forgo pursuit and risk having the debtor spend it in the interim, which is exactly what the Flemings did in this instance.

Neither the Bankruptcy Code nor its attendant rules offer a good solution for this problem. Granted, a debtor's intentional failure to disclose an expected refund in his sworn schedules can result in the denial of the debtor's discharge. 11 U.S.C. § 727(a)(4)(A). Establishing the requisite fraudulent intent, though, can be difficult if the debtor relied upon his attorney to assist him in the preparation of his schedules. Similarly, the failure to disclose an expected refund may result in the subsequent exemption of the refund being disallowed. But in order to prevail, bad faith or concealment must be evident. *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984).

The problem is further exacerbated by the fact that most debtors are not lawyers. Courts and practitioners are accustomed to the bankruptcy concept of the debtor's property belonging to a separate estate upon the filing of the case and the property not becoming the debtor's again until it has been successfully removed as an allowed exemption.[11] However, it should come as no surprise that such nuances are often lost on debtors, especially when the property involved is as tempting as a tax refund. In the Flemings' case, they succumbed to that temptation by spending what was

---

[11]Under the former Bankruptcy Act, exempt property never became property of the estate. *Liberty State Bank & Trust v. Grosslight (In re Grosslight)*, 757 F.2d 773, 775 (6th Cir. 1985); *see also* 5 Collier on Bankruptcy ¶ 541.LH. [1]-[3] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009). However, the Bankruptcy Code reversed course and, as a consequence, all property of the debtor, including that which may be exempted, now becomes the estate's property immediately upon the commencement of the case. The debtor then receives back from the estate whatever is thereafter allowed as his exemptions. *Owen v. Owen*, 500 U.S. 305, 308, 111 S. Ct. 1833, 1835 (1991). *Barroso-Herrans v. Lugo-Mender (In re Barroso-Herrans)*, 524 F.3d 341, 344 (1st Cir. 2008).

5

unquestionably estate property to repair their home and car and to purchase new hearing aids for Ms. Fleming.

Whether appreciated by the Flemings or not, there is no question that their unauthorized postpetition expenditures of the refund are avoidable under Section 549.[12] It is equally clear that recovered postpetition transfers like the ones the Flemings made may not then be claimed as exempt.[13] And finally, those from whom a recovery may be made under Section 550(a) include the beneficiary of the avoided transfer and the Flemings most certainly benefitted from using the estate's money as they did.

Nevertheless, Section 550(a) has been interpreted as excluding from its scope the actual transferor of an avoided conveyance.

> We have found no cases in which a court allowed a trustee to recover the value of an avoidable conveyance directly from the transferring debtor under section 550(a)(1). Having no guidance, we have applied

---

[12]  [T]he trustee may avoid a transfer of property of the estate—
    (1) that occurs after the commencement of the case; and
    (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
    (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

[13]  (g) Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—
    (1)(A) **such transfer was not a voluntary transfer** of such property by the debtor; and
    (B) the debtor did not conceal such property; or
    (2) the debtor could have avoided such transfer under subsection (f) (1)(B) of this section.

11 U.S.C. § 522(g) (emphasis added). *See also* 11 U.S.C. § 522(h).

the language of the statute and its apparent purpose, as well as economic reality and the contextual sense of the statutory scheme, to interpret the likelihood that Congress intended to include the debtor as an "entity" from which the trustee could recover under section 550(a)(1). After examining these factors, we agree with the bankruptcy and district courts that there is no cause of action created by section 550(a)(1) in a trustee to recover the value of an avoidable conveyance from a transferring debtor.

*In re Coggin*, 30 F.3d 1443, 1454 (11th Cir. 1994) (footnotes omitted), *abrogated on other grounds by Kontrick v. Ryan*, 540 U.S. 443, 124 S. Ct. 906 (2004). *See also Bohm v. Dolata (In re Dolata)*, 306 B.R. 97, 144 (Bankr. W.D. Pa. 2004).

This court agrees with *Coggin*. Section 550(a)(1)'s syntax does seem to limit the referenced beneficiary to only those whom the transferor intended to indirectly benefit from the transfer as opposed to the transferor himself. Moreover, one must remember that Section 550 complements many different avoidance sections.[14] Holding a debtor accountable for an unauthorized transfer of estate property under Section 549 certainly has appeal, especially when the debtor used the transfer to receive goods or services at the estate's expense. However, Section 550(a)(1) also addresses the recovery of preferential transfers and it is in that context that a recovery against the debtor himself as a Section 550(a) beneficiary breaks down. In other words, if the purpose of avoiding preferences is to ensure equality of treatment among creditors,[15] it makes little sense to target the debtor himself for recovery even though the debtor would have technically benefitted from every preference made.

The alternative to Section 549 is Section 542, which is in fact the section that Trustee relies upon in seeking a recovery from the Flemings. It states in pertinent part that:

---

[14]Section 550 also permits a trustee to recover transfers that are avoided under Sections 544, 545, 547, 548, 553(b), and 724(b).

[15]*Lindquist v. Dorholt (In re Dorholt, Inc.)*, 224 F.3d 871, 873 (8th Cir. 2000); *Yellowhouse Mach. Co. v. Mack (In re Hughes)*, 704 F.2d 820, 822 (5th Cir. 1983).

7

> [a]n entity . . . in possession, custody, or control . . . of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

But the Flemings argue that Section 542 is also inapplicable. First, they assert that "entity" cannot include debtors since the word "debtor" appears separately in the same subsection. The Flemings, though, are wrong. "Entity," which is a defined term, is a set of things, if you will, that includes all individuals, partnerships, corporations, estates, trusts, governmental units, and the United States Trustee. 11 U.S.C. §§ 101(15) and (41). "Debtor," in turn, is a subset of this larger group that includes only individuals, partnerships, corporations, and municipalities. 11 U.S.C. §§ 101(13) and (41). Consequently, it follows that an individual like Mr. Fleming or Ms. Fleming can be both an "entity" and a "debtor" under the Code without contradiction. Or, conversely, it does not follow, as the Flemings would have it, that an individual debtor cannot also be an entity within the meaning of the Code.

Moreover, the court finds no inconsistency within Section 542(a) itself that would refute this logic. The clear purpose of this section is to enable the trustee to gain control of whatever property he is to administer on behalf of the estate. Since in most cases the bulk of that property would be in the debtor's possession, it would be odd not to include the debtor among those who are subject to Section 542's provisions.[16] On the other hand, it is equally understandable that Congress, in

---

[16]*See also* FED. R. BANKR. P. 7001 ("The following are adversary proceedings: (1) a proceeding to recover money or property, **other** than a proceeding to compel the debtor to deliver property to the **trustee** . . . .") (emphasis added).

8

describing what must be turned over under this section, chose not only to identify what the trustee could administer for the estate's claimants, but also what the debtor himself could then remove from the estate's control by exemption. Indeed, reading Section 542 in this way benefits debtors generally since it offers a means whereby exemptible property outside of the debtor's control at the outset of the case can nonetheless be marshaled so that the debtor, if he chooses, may once again enjoy its use as exempt property.

The Flemings' second argument is that Section 542 permits only the recovery of property itself and, therefore, they are now excepted from Section 542's provisions because the 2005 tax refund was spent long ago. As support, the Flemings cite *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423 (8th Cir. 2007). In *Pyatt*, the debtor had written checks on his bank account that had not yet cleared when his case commenced. The trustee, therefore, demanded that the debtor turnover the funds represented by those checks on the theory that his deposit balance as of the filing date had become the estate's property and, as such, the debtor had to account for that amount as opposed to whatever remained on deposit after the checks had cleared. The bankruptcy court had agreed with the trustee but the bankruptcy appellate panel reversed. The Eighth Circuit then affirmed the BAP's decision.

*Pyatt* recognized that the failure of some of the checks to have cleared prepetition resulted in postpetition transfers being made from what otherwise had become property of the estate when the debtor had filed his case. However, the Eighth Circuit panel also acknowledged that the debtor had apparently not done anything fraudulent. In effect, the debtor, at least in the panel's view, was just a victim of timing. Consequently, the panel faced a particularly difficult set of facts against which to test the scope of Section 542(a)'s express language.

*Pyatt* based its decision both upon its interpretation of the Code and common practice under the former Bankruptcy Act. Regarding the former, it concluded that Section 542 had to be interpreted as permitting a recovery against only a person who was actually in possession or control of the subject property; otherwise, there could be an unintended double recovery.

> Here, both the debtor and the debtor's payees had "possession, custody, or control" of the funds at some point after the bankruptcy petition was filed. Under the trustee's reading of the provision, the trustee could proceed both against the debtor and against the payees and obtain double satisfaction. The code's drafters apparently did not think it necessary to prevent the trustee from obtaining double satisfaction under § 542(a). *Cf.* 11 U.S.C. § 550(d) (prohibiting double satisfaction in avoidances under §§ 544, 545, 547-549, 553(b), and 724(a); no mention of § 542(a)). The absence of such a prohibition suggests that the drafters did not intend to authorize a trustee to proceed under § 542(a) against everyone who may have had control over property of the estate at some point after the petition was filed.

*Id.* at 427-28.

However, if, as *Pyatt* concludes, Section 542 permits a debtor to use property of the estate without consequence, then the opportunity is certainly there for a debtor to remove from the estate more than was intended by the exemption process. For example, a debtor, in choosing his exemptions, could forgo exempting cash deposit accounts and other liquid assets yet still benefit as if they had been exempted simply by expending the same before the trustee is able to gain control.[17]

---

[17]Of course, such a stratagem could jeopardize the debtor's discharge. *See, e.g.,* 11 U.S.C. § 727(a)(2)(B). However, an actual intent to hinder, delay, or defraud must be established and, as *Pyatt* itself illustrates, it is certainly possible for a debtor to benefit from postpetition transfers made without also harboring the requisite fraudulent intent. Moreover, depriving the debtor of his discharge does not restore to the estate property that otherwise could have been distributed to creditors.

As for common practice under the former Act, *Pyatt* made these observations:

> Precode practice suggests that § 542(a) permits a trustee to compel turnover only from entities which have control of property of the estate or its proceeds at the time of the turnover demand. Precode practice is relevant in construing the bankruptcy code. *See Dewsnup v. Timm*, 502 U.S. 410, 419-20, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). It is especially instructive when interpretation of a "judicially created concept" is at issue, *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), and turnover proceedings were an uncodified creation of the courts before enactment of the current code.
>
> The leading case on pre 1978 turnover proceedings is *Maggio v. Zeitz (In re Luma Camera Service, Inc.)*, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). There, the president of a bankrupt enterprise was ordered to turn over property which he did not have. He was jailed for contempt when he did not comply with the order. The Supreme Court held that the president was not a proper defendant in a turnover action, for turnover proceedings are permissible "only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding." *Id.* at 63-64, 68 S.Ct. 401 (emphasis added). The use of a turnover remedy was inappropriate "if, at the time it is instituted, the property and its proceeds have already been dissipated." *Id.* at 64, 68 S.Ct. 401. Precode practice thus required control of the property at the time the motion to compel turnover was brought.

*Id.* at 428-29.

Precode practice, though, is relevant only if Congress, in enacting the Bankruptcy Code, has been ambiguous or the relevant code section requires further interpretation. But "[w]here the meaning of the Bankruptcy Code's text is itself clear . . . its operation is unimpeded by contrary . . . prior practice." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 10, 120 S. Ct. 1942, 1949 (2000) (quoting from *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546, 114 S.Ct. 1757, 1765 (1994)).

11

What is wanting in *Pyatt*'s analysis is appropriate deference to the ability of the trustee to now compel under Section 542 the delivery of "the value of such property" in lieu of the property itself. As *Pyatt* itself acknowledges, Section 542 had no counterpart under the former Bankruptcy Act. Rather, turnover was a product of "judicial innovation" derived from the general notion that the courts were empowered under the former Act to "cause the estates of bankruptcy to be collected . . . ." *Maggio v. Zeitz (In re Luma Camera Serv., Inc.)*, 333 U.S. 56, 61, 68 S. Ct. 401, 404 (1948) (quoting Bankruptcy Act, 11 U.S.C. § 11(a)(7) (repealed)). Granted, that "innovation" permitted recovery of the property's proceeds as well as the property itself so long as those proceeds remained in the possession of the recipient at the time the turnover was sought. 333 U.S. at 63, 68 S. Ct. at 405. But the fact remains that a court's authority to compel turnover under the former Act was limited to only its own summary jurisdiction over the estate's actual property.

Therefore, it is difficult for this court to read the trustee's ability under Section 542 to now recover the "value of such property" as an alternative to recovering the property itself as simply a reiteration of what *Maggio* recognized was a product of judicial necessity under the former Act. Rather, the common meaning of the phrase "value of such property," when juxtaposed with the notion of the property itself being turned over, suggests to this court as well as others that Congress intended to expand upon *Maggio*, rather than to just codify it.

> Proceedings under § 542 effectively combine both the summary and the plenary remedies a trustee was required to pursue under the old Act, thus, allowing the pursuit in a single proceeding of relief that previously may have required two separate proceedings. Consequently, if the turnover defendant is still in possession of property of the estate, the trustee may recover that property. If the defendant no longer has possession of property of the bankruptcy estate, the court may inquire into the propriety of its disposition and, if appropriate, enter a money judgment in favor of the trustee for the

12

> value of such property. In effect, turnover proceedings have become what the Supreme Court noted they were not under the old Bankruptcy Act. They are not only the means by which the trustee can recover specific property of the estate and its identifiable proceeds, but also the means by which it can recover "damages for tortious conduct such as embezzlement, misappropriation or *improvident dissipation of assets.*" *Maggio*, 333 U.S. at 63, 68 S.Ct. at 405 (emphasis added).

*Boyer v. Davis (In re U.S.A. Diversified Prods., Inc.)*, 193 B.R. 868, 879 (Bankr. N.D. Ind. 1995), *aff'd sub nom. Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re U.S.A. Diversified Prods., Inc.)*, 100 F.3d 53 (7th Cir. 1996).

The Flemings also cite *Hager v. Gibson*, 109 F.3d 201 (4th Cir. 1997) as support for their position. However, the Fourth Circuit has since held that a party need not be still in possession of the subject property in order to be held accountable for it under Section 542(a).

> The firm's third contention concerns its lack of possession and inability to turn over the profits already distributed which is answered by *In re USA Diversified Prods., Co.*, with which we agree. The court in that case decided that section 542(a) "requires the delivery of the property or the value of the property" and that to read it otherwise would enable possessors of property of the estate to escape trustees' demands "simply by transferring the property to someone else."

*Beaman v. Vandeventer Black, LLP (In re Shearin)*, 224 F.3d 353, 356-57 (4th Cir. 2000) (quoting *U.S.A. Diversified Prods., Inc.*, 100 F.3d at 56).

As for *Hager*, the majority in *Shearin* observed that it was easily distinguished by the fact that the party there had never been in possession or control of the property during the case. Consequently, there was never anything that had to be turned over in the first place. *Id.* at 357. *See also Bailey v. Suhar (In re Bailey)*, 380 B.R. 486, 491-93 (6th Cir. B.A.P. 2008).

This court agrees with *Shearin* and *Diversified Products*. Therefore, it rejects the Flemings' contention that they can in effect exonerate themselves from their responsibility to account to Trustee for property that clearly belonged to the estate through the simple expedient of having spent it.

The Flemings' third and final argument against recovery under Section 542 is laches. Specifically, the Flemings contend that Trustee's demand against them is now barred because he inexcusably allowed more than three years to pass before actually commencing a turnover proceeding.[18]

Bankruptcy courts are frequently described as courts of equity[19] and laches is certainly an equitable defense.[20]  But Section 105(a) itself empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Moreover, the Supreme Court and the Sixth Circuit have held that the Bankruptcy Code takes precedent over equity in determining the bankruptcy court's authority to act.  *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207, 108 S. Ct. 963, 969 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *Miller v. Pennsylvania Higher Educ. Assistance Agency (In re Miller)*, 377 F.3d 616, 621 (6th Cir. 2004); *Wasserman v. Immormino (In re Granger Garage, Inc.)*, 921 F.2d 74, 77

---

[18]Ironically, Trustee may also argue laches as a defense to the Flemings' recent effort to now claim as exempt the tax refund Trustee has been inquiring about for years. *See, e.g., In re Daniels*, 270 B.R. 417, 425–27 (Bankr. E.D. Mich. 2001).  Of course, whether the Flemings have a right at this juncture to claim the refund as exempt begs the question of whether that refund, which the Flemings spent long ago, even remains for the Flemings to exempt.

[19]*Pepper v. Litton*, 308 U.S. 295, 60 S. Ct. 238 (1939); *Young v. U.S.*, 535 U.S. 43, 122 S. Ct. 1036 (2002).

[20]*Vance v. U.S.*, 965 F.Supp. 944, 946-47 (E.D. Mich. 1997); *Urbanco, Inc. v. Urban Systems Streetscape, Inc.*, 111 B.R. 134, 135 (W.D. Mich. 1990).

14

(6th Cir. 1990). Therefore, while laches may seem like a reasonable approach, the court concludes that it is better to address Trustee's delay with the tools already provided by Section 105(a).[21]

The problem in the instant case is that Congress has not imposed any deadline upon the trustee's right to compel, for example, the turnover of a tax refund or any restriction upon the debtor's unauthorized expenditure of that refund before it is finally allowed as an exemption. Of course, the absence of the same could be interpreted as a decision to impose nothing at all. However, this court cannot ignore the fact that both trustees and debtors need some type of guidance with respect to an issue that arises in virtually every Chapter 7 case that is filed. Consequently, the authority given the bankruptcy court under Section 105(a) to fill in gaps in the Code so as to facilitate its administration seems tailor made for the problem at hand.

There is already within the Bankruptcy Code guidance as to what are the respective obligations of the trustee and the debtor concerning tax refunds. A Chapter 7 trustee, for example, has the unqualified duty to "collect and reduce to money the property of the estate for which such trustee serves. . . ." 11 U.S.C. § 704(a)(1). Consequently, a trustee at the very least is obligated to take control of disclosed tax refunds for which no exemption has been claimed. Similarly, the debtor is under a statutory duty to surrender what now becomes the estate's property immediately upon the commencement of the case regardless of what might be the debtor's intention concerning its

---

[21]This is not to say that equity does not have its place in the administration of the Bankruptcy Code. However, equitable defenses such as laches should not be viewed as remedies that exist apart from the Code; rather, they should be treated as concepts that may be incorporated into the process as the need arises under the much more flexible authority given the bankruptcy courts under Section 105(a). Or, to put it differently, a bankruptcy court, in exercising its authority under Section 105(a), should be able to borrow from equity the principles of fairness it embodies yet still be able to fashion those principles to meet the particular needs of the Bankruptcy Code. *See also In re Dow Corning Corp.*, 280 F.3d 648, 657 (6th Cir. 2002) ("We conclude that due to this statutory grant of power [*i.e.*, Section 105(a)], the bankruptcy court is not confined to traditional equity jurisprudence . . . .").

15

exemption. 11 U.S.C. § 521(a)(4). And from this duty comes the debtor's corresponding obligation not to spend or otherwise dissipate the targeted property unless and until its exemption is finally allowed.

These duties and obligations in turn prompt the following observations:

- Tax refunds are too tempting an asset to leave in the hands of a debtor who is hard-pressed for funds. Therefore, the trustee must move with celerity to take control of refunds as soon as they are disclosed, especially if they have not also been claimed as exempt.

- With this said, the trustee should have some time – e.g., sixty days – to informally assess the circumstances before actually having to file a Section 542 motion to turnover the refund. The trustee would also be expected to use this time to negotiate a voluntary turnover of whatever the trustee believes is the estate's share.

- However, if the trustee wishes to hold the debtor accountable under Section 542 for any premature expenditure of the refund, then he must file the appropriate motion before the sixty days has passed. Put simply, the trustee cannot wait indefinitely to take control of a refund, once disclosed, on the misplaced assumption that the debtor will not spend it in the interim.

- As for the debtor, spending the refund prematurely – i.e. spending it before it has been actually allowed as an exemption – may put the debtor at risk of liability under Section 542. The risk taken depends upon when the expenditure took place. If it occurred before the refund was disclosed, then the debtor should be accountable without exception. The debtor should also be accountable if the expenditure

16

occurred after the refund was disclosed but before any claim of exemption is made. On the other hand, once an exemption is claimed, the debtor's risk should depend upon whether the exemption is allowed or not. If the exemption is allowed – i.e., the Rule 4003(b) objection period has passed and all timely objections have been resolved in the debtor's favor – then the debtor should be excused. If, though, the exemption is not allowed, then the debtor should be held accountable.

In sum, these observations build upon the debtor's and the trustee's respective statutory duties so as to: (1) motivate the debtor to disclose and, if desired, exempt his tax refund; and (2) to motivate the trustee in turn to take control of whatever he believes is not exemptible once the refund is disclosed. The debtor's motivation to disclose is the risk he takes of being held personally liable under Section 542 for any expenditure of the refund prior to its disclosure and actual exemption. As for the trustee, he risks being unable to hold the debtor accountable for such an expenditure unless he formally seeks recovery of the refund under Section 542 within a relatively short period of time after its disclosure.[22]

Applying these guidelines to the instant case, the court concludes that Trustee's delay in seeking the actual turnover of the Flemings' 2005 tax refund until more than three years after discovering its existence bars Trustee from now holding the Flemings liable under Section 542(a)

---

[22]Consider, for example, a debtor who discovers after preparing his postpetition tax returns that he is entitled to a $5,000 tax refund and that the estate's pro rata share is $2,500. A debtor should be accountable for the estate's share unless and until there has been disclosure to the trustee. However, once the refund has been disclosed by the debtor, the trustee is responsible for administering it. That administration may in many instances be as simple as acknowledging the debtor's claimed exemption of what now has been disclosed. However, if the debtor has not claimed the refund as exempt or even if the debtor has claimed it as exempt but the trustee disagrees, then it is incumbent upon the trustee to take control of the refund just as it is incumbent upon him to take control of any other asset that is potentially available for distribution to the estate's claimants.

17

for their prior expenditure of the same. In reaching this conclusion, though, the court is not simply applying the sixty-day deadline it has just set for a typical case. Rather, the court has taken into consideration the fact that the Flemings never amended their schedules to claim it as exempt until literally the eve of the evidentiary hearing. The court also recognizes that Mr. Fleming advised Trustee at the time he informally disclosed the refund that he and his wife would leave the refund "untouched" until Trustee released it. However, what remains unexplained is why Trustee still waited over three years to take control of a sizeable refund which he clearly knew the Flemings were about to receive and in which he was asserting a claim from the very outset. Perhaps the peculiar circumstances of this case would have given Trustee some additional leeway to hold the Flemings accountable for their decision to go ahead and spend the refund without first subjecting it to the exemption process. Nonetheless, it remained Trustee's responsibility throughout to take control of the contested refund and, as such, it would be unfair to now hold the Flemings accountable for property of the estate that Trustee should have taken care of years ago.

B.     Cash and Deposit Accounts

The Flemings not only amended their Schedule C to finally claim as exempt the tax refund under the federal scheme of exemptions but also to reclaim as exempt under that same scheme the cash and deposit accounts.[23] However, it is fair to infer from the record that the Flemings also spent these amounts long ago. Therefore, for the reasons already given, the Flemings cannot now exempt what has previously been spent. But Trustee is likewise barred at this late date from holding the

---

[23]The Flemings originally selected the state scheme of exemptions permitted by Section 522(b)(3)(A) and they had claimed the cash and deposit accounts as exempt under MICH. COMP. LAWS § 257.524. However, the court disallowed that prior exemption because the cited statute applied only to monies deposited with the Michigan State Treasurer under that statute.

18

Flemings accountable for these past expenditures and, therefore, Trustee's request for Section 542(a) relief regarding the expended cash and deposit accounts is also denied.

## CONCLUSION

This court views its observations in this opinion concerning a debtor's disclosure and exemption of tax refunds and a trustee's administration of the same as no more than guidelines. Section 105(a) does not empower the court to actually enact rules nor would this court be so presumptuous even if it did. Indeed, this case itself illustrates that the issue must ultimately be decided upon the circumstances presented in each instance. However, it is also clear from the numerous objections that Trustee has filed with this court concerning the disclosure and exemption of tax refunds that some guidance is needed and it is in this spirit that this court has offered the guidelines it has. Debtors and trustees alike are put on notice that the court will use these guidelines as its standard for assessing what has become a too frequent source of frustration to all concerned. The hope, of course, is that all will take heed and, as a consequence, the future administration of tax refunds will become easier.

The court will enter a separate order consistent with this opinion.

2/19/10

Hon. Jeffrey R. Hughes
United States Bankruptcy Judge

Signed this ___19th___ day of ___February, 2010___,
at Grand Rapids, Michigan.

19